[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Pivonka v. Corcoran*, Slip Opinion No. 2020-Ohio-3476.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3476

PIVONKA ET AL., APPELLEES, *v.* CORCORAN,[1] DIR., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Pivonka v. Corcoran*, Slip Opinion No. 2020-Ohio-3476.]**

*Class action—Subject-matter jurisdiction—Medicaid—R.C. 5160.37 established sole remedy for named plaintiffs and unnamed class members who reimbursed Ohio Department of Medicaid on or after September 29, 2007, pursuant to department's right of recovery under former R.C. 5101.58— Common pleas court lacked subject-matter jurisdiction over class action for named and prospective class plaintiffs whose claims for recovery fall within R.C. 5160.37's express language—Court of appeals' judgment reversed and cause remanded to common pleas court.*

(No. 2019-0084—Submitted January 28, 2020—Decided June 30, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 106749,

_____

1. Under S.Ct.Prac.R. 4.06(B), Maureen Corcoran, the current director of the Ohio Department of Medicaid, is automatically substituted for Barbara Sears, the former director, as a party to this action.

2018-Ohio-4866.

_____

**FRENCH, J.**

{¶ 1} In this appeal, we are asked to determine whether the common pleas court had subject-matter jurisdiction over a class action filed by plaintiffs-appellees, Michael A. Pivonka and Lisa Rijos.  That class action seeks a declaratory judgment that former R.C. 5101.58, which relates to Medicaid reimbursements, is unconstitutional and also seeks to recover all sums paid to the Ohio Department of Medicaid (the "Department") under that statute.

{¶ 2} Because R.C. 5160.37 now provides the sole remedy for Medicaid program participants to recover excessive reimbursement payments made to the Department on or after September 29, 2007, we conclude that the common pleas court lacked subject-matter jurisdiction over the class action for the named and prospective class plaintiffs whose claims for recovery fall within the statute's express language.  We therefore reverse the judgment of the Eighth District Court of Appeals affirming the trial court's decision to certify the class.  We remand this cause to the trial court to determine whether unnamed prospective class plaintiffs who reimbursed the Department before September 29, 2007, can maintain an action in the common pleas court.

## I. THE MEDICAID PROGRAM

{¶ 3} The federal government established the Medicaid program in 1965 through Title XIX of the Social Security Act, as amended in 42 U.S.C. 1396 et seq. *Arkansas Dept. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006).  The program provides joint federal and state funding for medical care for individuals who cannot afford to pay their own medical costs.  *Id.*  States are not required to participate in the Medicaid program, but they all do.  *Id.*; *see also* Medicaid.gov, *Program History: Medicaid*, https://www.medicaid.gov/about-us/program-history/index.html  (accessed  June

18, 2020) [https://perma.cc/D8C7-YRTE]. Through the program, the federal government pays the majority of the costs a state incurs providing medical care for Medicaid participants; the state pays the rest. *Ahlborn* at 275. Each state must create its own scheme to oversee and administer the Medicaid program. 42 U.S.C. 1396a. In doing so, a state must comply with all federal statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program. *Id.*

{¶ 4} Federal law also requires that each participating state give itself subrogation rights to recover certain costs the state paid under the Medicaid program. This means that each state must enact legislation giving it the right to seek reimbursement from a third-party tortfeasor (that is, a third-party wrongdoer) for medical expenses the third-party wrongdoer caused and that the state paid on behalf of a Medicaid participant. 42 U.S.C. 1396a(a)(25)(H). The state must first take reasonable measures to determine whether a third party is liable to pay for a Medicaid participant's medical costs. 42 U.S.C. 1396a(a)(25)(A). This third-party liability can arise when a health insurer is responsible for paying the participant's medical costs. *Id.* But it can also arise if a third-party tortfeasor injures the Medicaid participant and the injury requires the participant to seek medical care. When a third party is liable to pay for the Medicaid participant's medical costs, the state must seek reimbursement for the medical costs that it paid under the Medicaid program. 42 U.S.C. 1396a(a)(25)(B). The state may seek reimbursement directly from the third party. *Id.* It may also seek reimbursement from a Medicaid participant who received payment from the third party for the medical costs. 42 U.S.C. 1396k(a)(1) requires that all participating states expressly condition an individual's eligibility for Medicaid on the individual's assignment to the state of any rights the individual has to recover medical costs from a third party.

## II. OHIO'S MEDICAID SUBROGATION RIGHTS STATUTES

{¶ 5} Ohio's Medicaid subrogation rights statute was originally contained in former R.C. 5101.58, repealed in 2013 Am.Sub.H.B. No. 59. That statute gave the Ohio Department of Job and Family Services ("ODJFS" or "the Department")[2] a "right of recovery" against a third party's liability to a Medicaid participant for medical services and care resulting from an injury, disease or disability caused by the third party. Under that statute and prior to September 29, 2007, if the Medicaid participant brought an action against a third-party tortfeasor, the entire amount the participant received under a settlement or court judgment was subject to the state's right of recovery. 2003 Am.Sub.H.B. No. 95, 150 Ohio Laws, Part II, 1592-1594. The state could automatically recover up to the full amount of the costs it paid on behalf of the participant, even if the settlement, compromise, judgment or award excluded reimbursement for the medical costs or allocated a lesser amount to those costs. *See id.*

{¶ 6} Other states, including Arkansas, had similar Medicaid subrogation statutes allowing those states to recover up to the entire amount of the medical costs they paid on the Medicaid participant's behalf without regard to whether the settlement or court judgment allocated a lesser amount for reimbursement of medical expenses. In *Ahlborn*, 547 U.S. at 292, 126 S.Ct. 1752, 164 L.Ed.2d 459, the United States Supreme Court held that the federal Medicaid statute's anti-lien provision, 42 U.S.C. 1396p, prohibited Arkansas from enforcing its Medicaid subrogation statute because it allowed the state to assert an automatic lien on a

---

2. The ODJFS was the agency responsible for administering Ohio's Medicaid program until September 29, 2013, when the state created the Ohio Department of Medicaid to administer the program. *See* R.C. 5162.03. As used in this decision, the term "the Department" refers to either the Ohio Department of Medicaid or the ODJFS.

beneficiary's settlement or judgment proceeds in excess of the portion of the settlement or judgment that expressly represented reimbursement for medical costs.

{¶ 7} Although no court declared Ohio's statute, R.C. 5101.58, invalid or unconstitutional after *Ahlborn*, the General Assembly amended the statute in 2007. 2007 Am.Sub.H.B. No. 119. Effective September 29, 2007, the amended statute continued to give the Department an automatic right of recovery over certain third-party payments to Medicaid participants, but it created a presumption regarding the amount of the settlement or judgment that was subject to reimbursement to the Department for its payment of medical costs if the settlement or judgment did not specifically allocate those sums. After deducting attorney fees, litigation costs, and other expenses from the total judgment, award or settlement, the statute provided that the Department was entitled to receive "no less than one-half of the remaining amount, or the actual amount of medical assistance paid, whichever is less." Former R.C. 5101.58(G)(2).

{¶ 8} In *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 133 S.Ct. 1391, 185 L.Ed.2d 471 (2013), the United States Supreme Court struck down the portions of North Carolina's Medicaid subrogation statute that created a presumption similar to the one former R.C. 5101.58(G)(2) contained. The court held that a state could not comply with 42 U.S.C. 1396p by using a "conclusive presumption" that one-third of the participant's recovery represented compensation for medical costs. *Id.* at 635-636. The presumption operated to allow the state to take a portion of the judgment or settlement that was not designated as reimbursement for medical costs. The North Carolina statute violated the Supremacy Clause because it failed to provide a process for determining the portion of a participant's recovery that was attributable to medical costs. *Id.* at 636. Because the federal statute's anti-lien provision prohibits a state from claiming any part of a Medicaid participant's judgment or settlement not designated as payment for medical costs, it preempted North Carolina's Medicaid subrogation statute. *Id.*

{¶ 9} After the decision in *Wos*, and again without a court's declaration that former R.C. 5101.58 was invalid or unconstitutional, the General Assembly amended Ohio's Medicaid subrogation statute and renumbered it as R.C. 5160.37. The new statute took effect on September 29, 2013, *see* 2013 Am.Sub.H.B. No. 59, and the General Assembly amended it yet again on September 29, 2015, *see* 2015 Sub.H.B. No. 64. The 2015 version of R.C. 5160.37 still contained language similar to that in former R.C. 5101.58(A) and (G)(2), giving the Department an automatic right of recovery against liability for medical costs paid by a third-party tortfeasor. But, the 2015 version of R.C. 5160.37 created a "rebuttable presumption" that the Department would receive no less than one-half of the remaining amount of the judgment, award or settlement after fees, expenses, and costs were deducted. R.C. 5160.37(G)(2). The statute also provided a mechanism for a Medicaid participant to rebut the statute's presumption by way of an administrative hearing. *See* R.C. 5160.37(L). Relevant to the class of plaintiffs involved in this case, the statute created a process to address overpayments made after the September 29, 2007 post-*Ahlborn* amendments to R.C. 5101.58:

> A medical assistance recipient who has repaid money, on or after September 29, 2007, to the department or a county department pursuant to the department's or county department's right of recovery under this section, section 5160.38 of the Revised Code, or former section 5101.58 or 5101.59 of the Revised Code may request a hearing to rebut the presumption in division (G) of this section. The request shall be made in accordance with the procedure the department establishes for this purpose in rules required by division (O) of this section. It must be made not later than one hundred eighty days after September 29, 2015, or ninety days after the payment is made, whichever is later. A party successfully rebuts the

presumption by a showing of clear and convincing evidence that a different allocation is warranted.

R.C. 5160.37(L)(2). If a Medicaid participant disagrees with the hearing examiner's decision under that provision, the participant may file an administrative appeal with the Medicaid director. R.C. 5160.37(M). Following an administrative appeal, either party may appeal the Medicaid director's decision to the common pleas court in accordance with R.C. 119.12. R.C. 5160.37 does not provide a process for challenging alleged overpayments made to the Department before the September 29, 2007 amendments to R.C. 5101.58.

{¶ 10} The statute expressly provides that the administrative procedure outlined in divisions (L) through (N) is "the sole remedy available to a party who claims the department or a county department has received or is to receive more money than [it is] entitled to receive under this section, section 5160.38 of the Revised Code, or former section 5101.58 or 5101.59 of the Revised Code." R.C. 5160.37(P). According to the Department, it sent notices to participants who had reimbursed the Department under the older versions of the Medicaid subrogation statute regarding the new administrative-hearing process under R.C. 5160.37.

### III. FACTS AND PROCEDURAL HISTORY

{¶ 11} Pivonka and Rijos filed their class-action complaint in the Cuyahoga County Common Pleas Court on April 5, 2013, before R.C. 5160.37 was enacted. Their complaint seeks disgorgement and repayment of all sums the Department received pursuant to its right of recovery under former R.C. 5101.58 and a declaration that former R.C. 5101.58 is preempted by federal law and is unconstitutional under the Supremacy Clause. They argued that former R.C. 5101.58 is invalid pursuant to the decision in *Wos*.

{¶ 12} The named plaintiffs filed their complaint on behalf of themselves and similarly situated individuals who had both "received a demand from [the

7

Department] for repayment of medical expenses pursuant to" former R.C. 5101.58 and had "paid any amount to [the Department] pursuant to the Subrogation Statute." As to the named plaintiffs, Pivonka reached a settlement with a third-party tortfeasor in July 2012. Because he had received Medicaid benefits relating to his injuries, the Department collected $7,108.74 from the settlement. In 2013, Rijos received a compensatory-damages award in a negligence action against a third-party tortfeasor following a jury verdict. The Department collected $703.16 of Rijos's award pursuant to its statutory right to subrogation.

{¶ 13} On April 10, 2013, Pivonka and Rijos moved to certify as a class "[a]ll persons who paid any amount to [the Department] pursuant to [former R.C. 5101.58], from April 6, 2007, to the present, without requirement of court order."

{¶ 14} The Department filed a motion to dismiss the complaint and later filed a motion for summary judgment, arguing that former R.C. 5101.58 is constitutional and that the Department had the right to collect the reimbursements under the statute. The trial court denied both motions. The Department also moved for judgment on the pleadings, arguing that the General Assembly divested the common pleas court of jurisdiction when it enacted R.C. 5160.37. Pivonka and Rijos argued in opposition that the General Assembly violated the Ohio Constitution's single-subject rule for legislation when it included the Medicaid subrogation statute in a budget bill and further that the legislature cannot strip a court of jurisdiction it already has in a pending case. Pivonka and Rijos also argued that R.C. 5160.37 does not apply to their action because it applies only to claims alleging that the Department received "more money than [it is] entitled [to]," R.C. 5160.37(P), whereas they asserted that the Department was not entitled to receive any money because former R.C. 5101.58 is unconstitutional. The trial court denied the Department's motion for judgment on the pleadings on January 4, 2016, finding that the issue should not be decided on the pleadings alone.

{¶ 15} The trial court certified the class on December 21, 2017. In its memorandum opposing class certification, the Department again argued that R.C. 5160.37 divested the court of jurisdiction. As it had done before, the trial court rejected the Department's argument, determining that plaintiffs' claims were not for mere overpayment to the Department. The trial court also found the argument irrelevant to its decision whether to certify the class because a court's lack of subject-matter jurisdiction is an affirmative defense that can be raised later in a class action.

{¶ 16} The Department urged the trial court to adjudicate plaintiffs' constitutional arguments before deciding whether to certify the class because that determination affected whether the proposed class satisfied the class-certification requirements under Civ.R. 23. The trial court declined to do so, finding that a determination on the merits of plaintiffs' constitutional claims would best be made after class certification when the claims could be decided as to all members of the class instead of through individual lawsuits.

{¶ 17} The Department appealed the trial court's December 21, 2017 decision granting plaintiffs' motion for class certification to the Eighth District Court of Appeals. The court of appeals affirmed the trial court's decision. It determined that R.C. 5160.37 did not divest the trial court of subject-matter jurisdiction because Pivonka and Rijos sought a declaratory judgment that former R.C. 5101.58 is unconstitutional. 2018-Ohio-4866, 125 N.E.3d 343, ¶ 39-42. The court determined that because administrative agencies cannot decide the constitutional validity of a statute and because that was the sole issue underlying plaintiffs' claims, it would be futile and impractical to require plaintiffs to first seek redress through the administrative process. *Id.*

{¶ 18} We accepted jurisdiction to consider the Department's two propositions of law. *See* 155 Ohio St.3d 1412, 2019-Ohio-1205, 120 N.E.3d 30. In its first proposition of law, the Department contends that "[b]y statute, claims

that the State overcollected for Medicaid recovery may not be brought in common pleas courts, except as an administrative appeal." In its second proposition of law, the Department argues that "[a] class action may be certified only if rigorous analysis reveals that all prerequisites have been met—even if that analysis also touches upon the merits of the dispute."

{¶ 19} The Department also argues in its merit brief for the first time in this case that absent the applicability of the administrative-review process contained in R.C. 5160.37 to plaintiffs' claims, the Ohio Court of Claims has jurisdiction because plaintiffs' claims involve a lawsuit for money damages against the state.

## IV. ANALYSIS

{¶ 20} Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a case. *State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, ¶ 23. Without subject-matter jurisdiction, a trial court has no power to act. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 78, 701 N.E.2d 1002 (1998). A trial court cannot certify a class if it lacks subject-matter jurisdiction over the action.

{¶ 21} The Ohio Constitution gives the General Assembly the power to define the limits of the common pleas courts' jurisdiction. *State v. Wilson*, 73 Ohio St.3d 40, 42, 652 N.E.2d 196 (1995), citing Article IV, Section 4(B), Ohio Constitution. The General Assembly has given the common pleas courts subject-matter jurisdiction over all civil cases that it has not expressly excluded from their jurisdiction. *See Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.2d 1040, ¶ 20, citing R.C. 2305.01.

{¶ 22} The General Assembly has, from time to time, limited the common pleas courts' jurisdiction and conferred jurisdiction to another court. *See, e.g.*, R.C. 2743.03 (granting Court of Claims exclusive jurisdiction over certain claims filed against the state). It has also given jurisdiction to certain administrative agencies

over cases that the agencies are particularly well suited to handle. *See, e.g.*, R.C. 4905.26 (granting the Public Utilities Commission of Ohio exclusive jurisdiction over claims alleging discriminatory utility rates). The General Assembly vests exclusive jurisdiction in an administrative agency when it enacts a comprehensive statutory scheme for review by that agency. *State ex. rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 88 Ohio St.3d 447, 451, 727 N.E.2d 900 (2000), citing *Kazmaier Supermarket, Inc. v. Toledo Edison Co.*, 61 Ohio St.3d 147, 153, 573 N.E.2d 655 (1991).

*A. R.C. 5160.37 provides the sole remedy for the unnamed class members who reimbursed the Department for medical costs on or after September 29, 2007*

{¶ 23} By enacting R.C. 5160.37, the General Assembly created an administrative-review process for Medicaid participants challenging their overpayment of money to the Department subject to the statutory presumption contained in former R.C. 5101.58(G). That administrative process is, by its own terms, the "sole remedy" available to those individuals. R.C. 5160.37(P). It is complete and comprehensive. The statute identifies the steps required to request a hearing, the timing requirements for requesting a hearing, and the evidentiary standard required to rebut the statutory presumption. R.C. 5160.37(L)(1) and (2). It prescribes the hearing examiner's authority to consider and weigh the evidence, the Department's ability to raise affirmative defenses, and other rules that apply to the hearing. R.C. 5160.37(L)(3). It provides a process for appealing the hearing examiner's decision to the Department's director. R.C. 5160.37(M). And it provides a process for appealing the director's decision to the common pleas court. R.C. 5160.37(N). Accordingly, it has given tribunals acting under R.C. 5160.37 exclusive subject-matter jurisdiction over claims alleging that the Department received more money than it was entitled to receive under former R.C. 5101.58, beginning September 29, 2007. It applies equally to individuals who believe, as the purported class does here, that the Department was not entitled to receive *any*

money because that claim necessarily subsumes any claim that the Department received *more* money than it was entitled to receive.

{¶ 24} Pivonka and Rijos argue that the class members should not be required to utilize the administrative-review process under R.C. 5160.37 because their entire action is based on a constitutional challenge to former R.C. 5101.58. But even though administrative agencies cannot adjudicate constitutional questions, s*ee Mobil Oil Corp. v. Rocky River*, 38 Ohio St.2d 23, 26, 309 N.E.2d 900 (1974), a party cannot circumvent the administrative-review process by first raising a constitutional challenge in the common pleas court. Rather, the proper procedure for raising a constitutional challenge is to first exhaust all administrative remedies. A party can then raise the constitutional challenge in the court that hears the administrative appeal. *See id.*; *State ex. rel. Kingsley v. State Emp. Relations Bd.*, 130 Ohio St.3d 333, 2011-Ohio-5519, 958 N.E.2d 169, ¶ 18.

{¶ 25} Pivonka and Rijos filed this action before R.C. 5160.37 was enacted, but the trial court did not certify the class until after R.C. 5160.37 took effect. As we have recognized, "unnamed putative class members are not parties to an action prior to class certification." *Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N.E.2d 1175, ¶ 29; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 313, 131 S.Ct. 2368, 180 L.Ed.2d 341 (2011) (the argument that an unnamed class member is a party to the class action before the class is certified is a "novel and surely erroneous argument"). Because the General Assembly created an administrative-review process before any unnamed prospective class members became parties in this action, that process governs the prospective class members' claims. Unnamed prospective class members whose claims fall under R.C. 5160.37(L)(2) may seek redress only through that administrative process. Therefore, we hold that the trial court lacked subject-matter jurisdiction over the claims of the unnamed prospective class members who reimbursed the Department on or after September 29, 2007.

*B. Pivonka and Rijos's claims are also subject to the administrative-review process under R.C. 5160.37*

{¶ 26} We next consider whether the common pleas court had jurisdiction over the claims asserted by the two named plaintiffs, Pivonka and Rijos. Both Pivonka and Rijos repaid money to the Department after September 29, 2007, pursuant to the Department's exercise of its subrogation rights under former R.C. 5101.58(G). They fall within the class of individuals whose claims are covered by R.C. 5160.37. Although they filed this action before R.C. 5160.37 took effect, we conclude that R.C. 5160.37 provided the sole remedy by which the named plaintiffs could seek redress after it was enacted.

{¶ 27} The Ohio Constitution provides that the General Assembly "shall have no power to pass retroactive laws." Ohio Constitution, Article II, Section 28. This anti-retroactivity clause protects vested rights from new legislative encroachments and nullifies a new statute that creates burdens, duties, obligations or liabilities that did not exist when the statute became effective. *Longbottom v. Mercy Hosp. Clermont*, 137 Ohio St.3d 103, 2013-Ohio-4068, 998 N.E.2d 419, ¶ 21. A statute that both applies retroactively and is substantive violates this clause. *Id*. at ¶ 22. A substantive law is one that creates duties, rights, and obligations. *State ex. rel. Holdridge v. Indus. Comm.*, 11 Ohio St.2d 175, 178, 228 N.E.2d 621 (1967).

{¶ 28} In contrast, remedial legislation does not create, remove or affect any rights; it merely affects the methods and procedure by which rights are recognized, protected, and enforced. *Longbottom* at ¶ 25; *see also Holdridge* at 178 (a procedural or remedial law "prescribes methods of enforcement of rights or obtaining redress"). The anti-retroactivity clause does not prohibit remedial laws. *Longbottom* at ¶ 25. Rather, the legislature has complete control over the remedies afforded to parties. It is a fundamental principle of law that a party may not acquire a vested right in a remedy or any part of it. *Morgan v. W. Elec. Co., Inc.*, 69 Ohio

St.2d 278, 281, 432 N.E.2d 157 (1982), fn. 5.  Litigants have no right to a particular remedy or procedure, and nothing prohibits the legislature from altering or modifying methods, procedures or remedies as it sees fit.  *Id.*; *see also State ex rel. Michaels v. Morse*, 165 Ohio St. 599, 605-606, 138 N.E.2d 660 (1956).  To that end, both this court and the United States Supreme Court have recognized that legislatures can enact remedial laws that affect a tribunal's jurisdiction without offending a constitution's anti-retroactivity clause.  *See Longbottom* at ¶ 25-27 (Ohio Constitution); *Landgraf v. USI Film Prods*., 511 U.S. 244, 275, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (United States Constitution).  This includes legislation that affects a court's jurisdiction over a pending case.  *See, e.g.*, *Morgan* at 284-285.

{¶ 29} In *Landgraf*, the United States Supreme Court recognized that it has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed," without violating federal anti-retroactivity principles.  *Landgraf* at 274.  As the court explained, application of a new jurisdictional rule does not take away any substantive right; it simply changes the tribunal authorized to hear the case.  *Id.* Jurisdictional statutes speak to the power of the court, not the rights or obligations of the parties.  *Id*., citing *Republic Natl. Bank of Miami v. United States*, 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring).

{¶ 30} Here, R.C. 5160.37 has established an administrative-review process that is expressly "remedial in nature."  R.C. 5160.37(P).  Rather than affecting any substantive rights, it changes the tribunal available to a Medicaid participant who claims the Department received more money than it was entitled to receive under the Medicaid subrogation statutes.

{¶ 31} Because the statute does not affect a substantive right, we apply it as written.  The administrative-review process contained in R.C. 5160.37(L) through (N) provides the sole avenue of redress for any "medical assistance recipient who

has repaid money, on or after September 29, 2007, to the department or a county department pursuant to the department's or county department's right of recovery under this section, section 5160.38 of the Revised Code, or former section 5101.58 or 5101.59 of the Revised Code," R.C. 5160.37(L)(2), and "who claims the department or a county department has received or is to receive more money than [it is] entitled to receive," R.C. 5160.37(P). This includes named plaintiffs Pivonka and Rijos. Pivonka and Rijos were required to raise their claims with the Department pursuant to the process set forth in R.C. 5160.37(L) through (N).

*C. The trial court must decide whether it has subject-matter jurisdiction over the plaintiffs who are not subject to R.C. 5160.37*

{¶ 32} Our application of R.C. 5160.37 does not address the entire certified class. R.C. 5160.37(L)(2), by its terms, applies only to participants who repaid money to the Department on or after September 29, 2007. But the class that the trial court certified includes participants who repaid money to the Department beginning on April 6, 2007. Those participants who repaid money to the Department between April 6 and September 28, 2007, are not required to request a hearing with the Department to challenge the Department's exercise of its subrogation rights.

{¶ 33} The Department argues for the first time on appeal here that in the absence of the applicability of the administrative-review process contained in R.C. 5160.37 to the plaintiffs' claims, the Court of Claims has exclusive jurisdiction over this action because plaintiffs seek legal, rather than equitable, relief. Subject-matter jurisdiction involves the power of a court to adjudicate a case. As such, it can never be waived, and it may be challenged at any time. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11.

{¶ 34} When subject-matter jurisdiction is challenged, " 'the party claiming jurisdiction bears the burden of demonstrating that the court has jurisdiction over the subject matter.' " *Marysville Exempted Village School Dist. Bd. of Edn. v.*

*Union Cty. Bd. of Revision*, 136 Ohio St.3d 146, 2013-Ohio-3077, 991 N.E.2d 1134, ¶ 10, quoting *Ohio Natl. Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir.1990). We have explained that the classification of a claim for restitution as either equitable or legal depends on the traceability of the funds the plaintiff seeks to recover. *Cleveland v. Ohio Bur. of Workers' Comp.*, ___ Ohio St.3d ___, 2020-Ohio-337, ___ N.E.3d ___, ¶ 11, 16.

{¶ 35} Here, because the Department did not raise its jurisdictional challenge in the trial court, the record has not been fully developed as to the relevant jurisdictional facts, including the disposition of the funds for which plaintiffs seek restitution. We therefore will not consider whether the Court of Claims has exclusive jurisdiction over plaintiffs' claims.

{¶ 36} Because R.C. 5160.37(L)(2) does not apply to claims made by participants who repaid money to the Department between April 6 and September 28, 2007, and we will not consider whether the Court of Claims has exclusive jurisdiction over those claims without further development of the record, we remand this cause to the trial court for further consideration. On remand, the record can be fully developed and the trial court can determine whether those unnamed plaintiffs who repaid money to the Department between April 6 and September 28, 2007, can maintain their action.

## V. CONCLUSION

{¶ 37} We hold that R.C. 5160.37 created the sole remedy for the named plaintiffs and the unnamed class members who repaid money to the Department on or after September 29, 2007, pursuant to the Department's right of recovery under former R.C. 5101.58. We remand this cause to the trial court to determine whether it has jurisdiction over claims made by participants who repaid money to the Department between April 6 and September 28, 2007. Based on our disposition of the Department's first proposition of law and our remand to the trial court for it to consider the remaining unnamed plaintiffs' claims, we need not address the

Department's second proposition of law. We reverse the judgment of the Eighth District Court of Appeals and remand this cause to the trial court for further consideration.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., concurs in judgment only.

_____

Dworken & Bernstein Co., L.P.A., and Patrick J. Perotti; Garson Johnson, L.L.C., and James A. Deroche; and McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and Christian R. Patno, for appellees.

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Henry G. Appel, Assistant Attorney General, for appellant.

_____