[Cite as *Internatl. Union of Heat & Frost Insulators, Local 50 v. Dept. of Commerce, Div. of Indus. Compliance, Bur. of Wage & Hour Administration*, 2024-Ohio-3078.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

International Union of Heat and     :
Frost Insulators, Local 50,

         :            No. 23AP-721

        Plaintiff-Appellant,           (C.P.C. No. 23CV-1688)

v.                     :

                                    (ACCELERATED CALENDAR)

Ohio Department of Commerce,     :
Division of Industrial Compliance,
Bureau of Wage and Hour Administration, :

        Defendant-Appellee.       :

---

D E C I S I O N

Rendered on August 13, 2024

---

**On brief:** *Bennett P. Allen, LLC*, and *Bennett P. Allen*, for appellant. **Argued**: *Bennett P. Allen*.

**On brief:** *Dave Yost,* Attorney General, *Sherry M. Phillips,* and *Lori J. Friedman*, for appellee. **Argued**: *Sherry M. Phillips*.

---

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} By its terms, Ohio's prevailing wage law applies to all construction projects that are "public improvements" as defined in R.C. 4115.03(C). The central issue in this case is one of first impression: whether Ohio's prevailing wage law applies to and governs the construction of a college dormitory by a public university.

{¶ 2} In concluding it does not, defendant-appellee, the Ohio Department of Commerce, Division of Industrial Compliance, Bureau of Wage and Hour Administration (hereinafter the "department"), implicitly found the dormitory construction project in Greene County, Ohio was exempt from Ohio's prevailing wage law because it is a residential project, as set forth in R.C. 176.05. As such, the department determined the accused

subcontractor, an insulation company located in Madison County, Ohio, was not in violation of the prevailing wage law, as alleged in the interested union party's administrative complaint.

{¶ 3} The union appealed from the department's decision to the Franklin County Court of Common Pleas pursuant to R.C. 4115.16(A). The court below broadly deferred to the department's findings and dismissed the case on November 7, 2023. That judgment is now before us on appeal, with the parties' arguments primarily centered on whether the construction of a college dormitory by a public university is a public works project subject to prevailing wages under Chapter 4115 of the Ohio Revised Code or a residential project subject to the wage rate set forth in R.C. 176.05.

{¶ 4} However, we do not have the occasion to address the merits of the parties' substantive arguments because we find, sua sponte, the trial court lacked jurisdiction over the subject matter of the case below. Accordingly, for the reasons that follow, we vacate the November 7, 2023 judgment and dismiss this appeal for lack of a final appealable order.

## I.  FACTUAL AND PROCEDURAL OVERVIEW

{¶ 5} On May 29, 2021, Central State University ("CSU") issued a request for qualifications[1] for "A Public/Private Partnership to Develop Student and Faculty/Staff Housing on the Central State Main University" (the "project"). (Adm. Record at 56-74.) It is undisputed CSU is a "public authority" as defined in R.C. 4115.03(A) and the project was a "public improvement" within the meaning of R.C. 4115.03(C). At issue is whether the dormitory construction project was exempt from Ohio's prevailing wage law, R.C. 4115.03 et seq., because it qualified as a residential project under R.C. 176.05.

{¶ 6} CSU awarded University Housing Solutions ("UHS") the contract for the college dormitory construction project in Greene County, Ohio. Adena Corporation ("Adena") served as the general contractor for the project (Adm. Record at 225), and subcontracted with KE Gutridge LLC to complete the heating, ventilation, and air

---

[1] Ohio law requires every "public authority" to use a "qualifications-based selection" procedure to award contracts for engineering, architecture, and surveying projects. *See* R.C. 153.69. When seeking to contract for professional design services, public authorities must announce the availability of the contract, in accordance with R.C. 153.67, and invite professional design servicers, as defined in R.C. 153.65, to submit a statement of qualifications, *see* R.C. 153.66.

conditioning scope of work (Adm. Record at 227-60). The mechanical scope of the heating, ventilation, and air conditioning work included insulation. (Adm. Record. at 244-45.)

{¶ 7} It is undisputed that Oldaker's Mechanical Insulation, LLC ("Oldaker's"), a business located in Madison County, Ohio[2] (*see* Adm. Record at 9), provided asbestos workers and paid them $25 per hour for their work in connection with CSU's dormitory construction project. Although no contract memorializing the terms of Oldaker's involvement is in the administrative record, no one disputes that Oldaker's was a subcontractor, as defined by Ohio Adm.Code 4101:9-4-02(HH), that performed field construction work involving insulation on this project.

{¶ 8} Plaintiff-appellant, International Union of Heat and Frost Insulators, Local 50 (hereinafter "Local 50" or the "union"), is a bona fide labor organization that negotiates with employers concerning wages, hours, terms, and conditions of employment.

{¶ 9} On August 15, 2022, Local 50 filed a complaint with the department alleging Oldaker's violated the prevailing wage law on the CSU dormitory construction project. (Adm. Record at 9-11.) Local 50 was not the bargaining representation for employees of Oldaker's but, rather, an "interested party" under R.C. 4115.03(F). This is because its signatory contractor, Pederson Insulation Company—a business located in Franklin County, Ohio—bid on the project. Local 50's standing as an interested party to pursue violations of prevailing wage law under R.C. 4115.16(A) is not at issue in this case.

{¶ 10} The union's complaint asserted prevailing wage violations by Oldaker's that involved reporting, recordkeeping, notification, wage requirements, and fringe benefits. (*See* Adm. Record at 9-11.) Pursuant to R.C. 4115.16(A) and 4115.13, the department investigated these alleged violations by requesting and reviewing the relevant project documents and wage records.[3]

---

[2] *See* Oldaker's Mechanical Insulation LLC, OHIO SECRETARY OF STATE, https://businesssearch.ohiosos.gov/?=businessDetails/3953774 (accessed Aug. 12, 2024).

[3] In relevant part, R.C. 4115.16(A) provides: "The complaint shall be in writing on a form furnished by the director and shall include sufficient evidence to justify the complaint. The director, upon receipt of a properly completed complaint, shall investigate pursuant to section 4115.13 of the Revised Code. The director shall not investigate any complaint filed under this section that fails to allege a specific violation or that lacks sufficient evidence to justify the complaint." Although the department proceeded to investigate upon receiving the union's complaint, it has since alleged the complaint was procedurally deficient. Since the department did not make that contention during the administrative review process, we decline to address it in this appeal.

{¶ 11} Most significantly, the documents obtained through the department's investigation showed that although Adena's October 2021 contract with KE Gutridge LLC stated the project was not subject to prevailing wage law (Adm. Record at 227, 234), Oldaker's provided its employees working on the CSU dormitory construction project with a "Prevailing Wage Notification to Employee" form in May 2022 (Adm. Record at 24-31, 452-59). And, we note that both CSU's request for qualifications (Adm. Record at 56-74) and UHS's project proposal (Adm. Record at 75-154) were silent on whether Ohio's prevailing wage law applied to the dormitory construction project.[4] As such, the administrative record is inconclusive on the issue of whether prevailing wage rates applied for this project.

{¶ 12} After concluding its investigation into Local 50's prevailing wage complaint, the department issued a letter to the union on December 14, 2022 stating that "[a] determination for back wages will not be issued" because its "review of the employer's records indicated that the prevailing wage rate was paid in full and that no additional wages were due." (Emphasis omitted.) (Adm. Record at 23.) As such, the department closed the administrative case. (*See* Adm. Record at 23.)

{¶ 13} On March 13, 2023, the union appealed the department's decision to the Franklin County Court of Common Pleas pursuant to R.C. 4115.16(A). (*See* Mar. 13, 2023 Notice of Appeal; Aug. 28, 2023 Appellant's Brief at 1; Sept. 22, 2023 Appellee's Brief at 4, 9; Nov. 7, 2023 Jgmt. Entry at 4.)

{¶ 14} Following briefing by the parties and the department's submission of the certified administrative record, the trial court entered a judgment on November 7, 2023 denying the union's motion for an oral hearing and dismissing the administrative appeal. Specifically, the trial court found no evidence that the department's review of Local 50's prevailing wage complaint "was unlawful, irrational, arbitrary[,] and/or capricious." (Jgmt. Entry at 4.) And, having broadly declined to "supplant itself into the investigative role given to the [department]," the trial court did not make any legal determination on the issue of whether a college dormitory construction project by a public university is exempt

---

[4] The department notes that a ground lease executed by the Ohio Department of Administrative Services to UHS's subsidiary on behalf of CSU in December 2021 described the land as being developed into "residential housing for students, faculty and staff of [CSU]." (Adm. Record at 267.)

from the prevailing wage law because it qualifies as a "residential" project under R.C. 176.05. (*See* Jgmt. Entry at 4.)

{¶ 15} Local 50 timely appealed from the trial court's November 7, 2023 judgment, and now raises the following two assignments of error for our review:

> [I.] THE COMMON PLEAS COURT ERRED BY FAILING TO FIND AN ABUSE OF DISCRETION WHERE AN ADMINISTRATIVE AGENCY'S DETERMINATION WAS NOT SUPPORTED BY ANY EVIDENCE.
>
> [II.] THE COMMON PLEAS COURT ERRED BY DEFERRING TO AN ADMINISTRATIVE AGENCY'S INTERPRETATION THAT R.C. 176.05 APPLIES TO DORMITORY CONSTRUCTION PROJECTS.

## II. ANALYSIS

{¶ 16} On appeal, Local 50 argues the trial court erred in giving unbridled deference to the department's determination that the dormitory construction project was residential. Specifically, Local 50 contends the administrative record did not support that finding (**first assignment of error**) and observes the department's December 14, 2022 decision contained no legal analysis construing Ohio's prevailing wage law with R.C. 176.05 to which the trial court could defer (**second assignment of error**).

{¶ 17} However, because we find that, under R.C. 45115.16(A), the Franklin County Court of Common Pleas lacked jurisdictional authority to render ***any*** judgment in the case below, we do not reach the merits of either assignment of error. Accordingly, we limit our review to the issue of jurisdiction.

{¶ 18} Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a case. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 23, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11-12, 34. Without subject-matter jurisdiction, a trial court has no power to act. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 78 (1998). Thus, " ' "[i]f a court acts without jurisdiction, then any proclamation by that court is void." ' " *Harper* at ¶ 23, quoting *Pratts* at ¶ 11, quoting *Jones* at 75.

{¶ 19} " 'A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case.' " *Harper* at ¶ 23, quoting *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19. Rather, an analysis of a

court's jurisdictional authority instead focuses "on whether the forum itself is competent to hear the controversy." (Citation omitted.) *Harper* at ¶ 23.

{¶ 20} The Ohio Constitution gives the General Assembly the power to define the limits of common pleas courts' subject-matter jurisdiction. *Pivonka v. Corcoran*, 162 Ohio St.3d 326, 2020-Ohio-3476, ¶ 21, citing *State v. Wilson*, 73 Ohio St.3d 40, 42 (1995), citing Ohio Constitution, Article IV, Section 4(B).

{¶ 21} In the context of administrative appeals, "[c]ourts of common pleas only have 'such powers of review of proceedings of administrative officers and agencies as may be provided by law.' " *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-709, 2013-Ohio-2742, ¶ 9, quoting Ohio Constitution, Article IV, Section 4(B). "The General Assembly vests exclusive jurisdiction in an administrative agency when it enacts a comprehensive statutory scheme for review by that agency." *Pivonka* at ¶ 22, citing *State ex. rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 88 Ohio St.3d 447, 451 (2000), citing *Kazmaier Supermarket, Inc. v. Toledo Edison Co.*, 61 Ohio St.3d 147, 153 (1991). Thus, jurisdiction over an administrative appeal is improper "unless granted by R.C. 119.12 or other specific statutory authority." *Abt v. Ohio Expositions Comm.*, 110 Ohio App.3d 696, 699 (10th Dist.1996).

{¶ 22} In analyzing the jurisdictional issue presented by this case, we note the Ohio legislature enacted a comprehensive statutory scheme for administrative review of prevailing wage complaints involving public works projects in Chapter 4115 of the Ohio Revised Code. Thus, the department has exclusive jurisdiction over complaints alleging prevailing wage violations under Chapter 4115, except as otherwise expressly provided in that Chapter.

{¶ 23} Local 50's administrative appeal to the Franklin County Court of Common Pleas was initiated pursuant to R.C. 4115.16(A). (*See* Mar. 13, 2023 Notice of Appeal; Aug. 28, 2023 Appellant's Brief at 1; Sept. 22, 2023 Appellee's Brief at 4, 9; Nov. 7, 2023 Jgmt. Entry at 4.) This provision governs the filing in the common pleas court of a prevailing wage law complaint by an interested party. It provides, in relevant part, as follows:

> An interested party may file a complaint with the director of commerce ***alleging a specific violation*** of sections 4115.03 to 4115.16 of the Revised Code ***by a specific contractor or***

*subcontractor*. The complaint shall be in writing on a form furnished by the director and shall include sufficient evidence to justify the complaint. The director, upon receipt of a properly completed complaint, shall investigate pursuant to section 4115.13 of the Revised Code. The director shall not investigate any complaint filed under this section that fails to allege a specific violation or that lacks sufficient evidence to justify the complaint. If the director determines that no violation has occurred or that the violation was not intentional, the interested party *may appeal the decision to the court of common pleas of the county where the violation is alleged to have occurred*.

(Emphasis added.)  R.C. 4115.16(A).

{¶ 24} In its August 15, 2022 complaint to the department, Local 50 alleged Oldaker's paid its employees less than the prevailing rate of wages and failed to comply with other provisions of the prevailing wage law.  (Adm. Record at 11.  *See also* Aug. 28, 2023 Appellant's Brief at ¶ 32-35.)  Contrary to the dissent's suggestion otherwise, Local 50's prevailing wage complaint alleged specific violations *by* Oldaker's.  (*See* Dissent at ¶ 34-37.)  Indeed, had Local 50 failed to allege a "specific violation" of Ohio's prevailing wage law "by a specific contractor or subcontractor" as R.C. 4115.16(A) requires, the director of the department would not have any legal basis or obligation to investigate Local 50's complaint.  *See* R.C. 4115.16(A) ("The director shall not investigate any complaint filed under this section that fails to allege a specific violation or that lacks sufficient evidence to justify the complaint.").  Further, R.C. 4115.16(A) only permits an appeal from the director's determination "that no violation has occurred or that the violation was not intentional." Under the dissent's own premise that "Local 50 did not allege a specific violation," *no court* would have jurisdiction over this matter as an appeal brought pursuant to R.C. 4115.16(A).  (*See* Dissent at ¶ 33-36.)

{¶ 25} In any event, the department *did not find* that Local 50 failed to allege a specific violation as R.C. 4115.16(A) requires.  Instead, it concluded that no prevailing wage violation *by Oldaker's* occurred.  We do not reach the propriety of that determination. Instead, our resolution of this case turns on the issue of whether Local 50 appealed the department's decision finding no violation "to the court of common pleas of the county where the violation is alleged to have occurred." R.C. 4115.16(A).  For the following reasons, we conclude it did not.

{¶ 26} While the CSU dormitory construction project is in Greene County, Ohio, Oldaker's corporate office is located in Madison County, Ohio. (Adm. Record at 9.) In supplemental briefing ordered by this court, the parties agree that Local 50's prevailing wage complaint alleged violations by Oldaker's in Greene County, Ohio. (*See* Supp. Brief of Appellant at 1; Supp. Brief of Appellee at 2.) Most significantly, it is undisputed that none of the alleged violations by Oldaker's occurred in Franklin County, Ohio. (*See* Adm. Record at 9-11.)

{¶ 27} R.C. 4115.16(A) explicitly designates where an administrative appeal of the department's decision finding no prevailing wage violation can be brought: in the court of common pleas of the county where the violation is alleged to have occurred. A plain reading of R.C. 4115.16(A) confirms the appropriate forum for an appeal brought under this provision is the court of common pleas where the violation "***by a specific contractor or subcontractor***" is alleged to have occurred—not, as Local 50 argues in supplemental briefing, the common pleas court where the department purportedly misapplied Ohio's prevailing wage law. (Emphasis added.) (*See* Supp. Brief of Appellant at 1-5.) Put simply, "the violation" in the last sentence of R.C. 4115.16(A) relates back to "the violation" described in the first sentence of that same provision. Thus, if an interested party wants to challenge the department's factual or legal determination that the alleged violation either did not occur or was not intentional, only a common pleas court in "the county where the violation is alleged to have occurred" has jurisdiction under R.C. 4115.16(A) to hear that appeal.

{¶ 28} On review of the administrative record—including, most notably, Local 50's prevailing wage complaint—it is without question that the prevailing wage violations by Oldaker's were not alleged "to have occurred" in Franklin County, Ohio. *See* R.C. 4115.16(A). As such, we must conclude that, as a matter of law, Local 50 appealed to a forum without any jurisdictional authority to hear the controversy.

{¶ 29} Although neither the parties nor the trial court raised any concerns regarding the ability of the court below or this court to hear Local 50's case, a lack of subject-matter jurisdiction may—and sometimes, must—be raised sua sponte by a court at any stage in the

proceedings.[5]  *See, e.g., Diley Ridge Med. Ctr. v. Fairfield Cty. Bd. of Revision*, 141 Ohio St.3d 149, 2014-Ohio-5030, ¶ 19. (Citations omitted.)

{¶ 30}  Because we find that, pursuant to R.C. 4115.16(A), the Franklin County Court of Common Pleas lacked jurisdiction over the subject matter of the case below, the judgment entered on November 7, 2023 is void.[6]  *See, e.g., Harper*, 2020-Ohio-2913 at ¶ 22-26 (explaining that a court's judgment is void if it is entered without jurisdictional authority).  For this reason, we vacate that judgment and dismiss this appeal on the grounds that it is not taken from a final appealable order.  *See Broadmoor Ctr., LLC v. Dallin*, 10th Dist. No. 16AP-600, 2017-Ohio-4083, ¶ 13, citing *Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 8 (10th Dist.).

## III.  CONCLUSION

{¶ 31}  Having found the Franklin County Court of Common Pleas lacked subject-matter jurisdiction over Local 50's administrative appeal pursuant to R.C. 4115.16(A), we vacate the November 7, 2023 judgment of the Franklin County Court of Common Pleas and dismiss this appeal for lack of a final appealable order.

*Judgment vacated*;
*cause dismissed.*

---

[5] Though, in its supplemental briefing filed after oral argument, the department now contends, for the first time, that the Franklin County Court of Common Pleas lacked subject-matter jurisdiction over the case below. (*See* Supp. Brief of Appellee at 2-5.)

[6] We note the department dismissed Local 50's prevailing wage complaint against Oldaker's without reference to any statutes, rules, or regulations for its decision. (Adm. Record at 23. *See* Brief of Appellant at 3, 12-16.) However, during the R.C. 4115.16(A) appeal proceedings in the trial court, the department contended, for the first time, that it "reasonably concluded" a public university's dormitory construction project "met the definition for a residential housing project in R.C. 176.05(D)(1)." (*See* Sept. 22, 2023 Appellee's Brief at 9-17.) Under R.C. 4115.04(B)(5), a residential "project," as defined in R.C. 176.05(D)(1), is exempt from Ohio's prevailing wage law, R.C. 4115.03 to 4115.16.

Because the department did not address, construe, or apply R.C. 176.05(D)(1) in its decision dismissing Local 50's prevailing wage complaint, a mandamus action may be an appropriate procedure to compel the director of commerce (or a designated representative) to determine, in the first instance, whether the dormitory construction project in this case is exempt from Ohio's prevailing wage law under R.C. 4115.04(B)(5) and issue a written decision summarizing the factual and legal basis for that finding.  *But see State ex rel. Duffey v. Neighborhood Properties, Inc.*, 134 Ohio Misc.2d 1, 2005-Ohio-5060, ¶ 10 (C.P.) (construing both R.C. 176.05 and 4115.03 to determine whether Ohio's prevailing wage law applied to public authority's construction of a 15-unit apartment building in a taxpayer action for injunctive relief brought under R.C. 733.59, despite noting that "R.C. 176.01 et seq. pertain to housing advisory boards" and observing the absence of any evidence suggesting "that a housing advisory board is involved in this matter.").

MENTEL, P.J., concurs.
JAMISON, J., dissents.

JAMISON, J., dissenting.

{¶ 32} The majority has concluded that Franklin County Court of Common Pleas lacked subject-matter jurisdiction over Local 50's complaint to challenge the administrative findings pursuant to R.C. 4115.16(A). Because the violation alleged in the administrative complaint occurred in Franklin County, the conclusion reached by the majority is contrary to law. Accordingly, I respectfully dissent.

{¶ 33} R.C. 4115.16(A) governs appeals of the Department of Commerce's decisions on prevailing wage complaints to courts of common pleas. In relevant part, that division states:

> An interested party may file a complaint with the director of commerce alleging a specific violation of sections 4115.03 to 4115.16 of the Revised Code by a specific contractor or subcontractor. * * * If the director determines that no violation has occurred or that the violation was not intentional, the interested party may appeal the decision to the court of common pleas of the county where the violation is alleged to have occurred.

R.C. 4115.16(A). Under the plain language of this statute, the location of the violation alleged in the complaint determines the county in which the interested party must file its appeal.

{¶ 34} In its complaint filed with the department, Local 50 did not allege a specific violation but stated:

> Based on these records [provided by Central State University] it [is] impossible to determine whether Ol[d]akers Mechanical Insulation has complied with Ohio's prevailing wage law on the Project; therefore, Insulators Local 50 is requesting Ohio Department of Commerce, Bureau of Wage & Hour investigate to ensure all workers were paid the required wages and fringe benefits.

(Adm. Record at 11.)

{¶ 35} According to the majority decision, this complaint alleges a specific violation of the prevailing wage law by Oldakers Mechanical Insulation, LLC ("Oldakers"). I

disagree. In fact, Local 50 specifically states in its complaint that it could *not* determine if Oldakers had violated the prevailing wage law. Apparently, due to its lack of information, Local 50 could not articulate if the prevailing wage law was violated, how precisely the law was violated, or who exactly violated the law.

{¶ 36} Based on this record, the initial alleged violation of the prevailing wage law occurred when Central State University ("CSU") failed to "have the director of commerce determine the prevailing rates of wages of mechanics and laborers in accordance with section 4115.05 of the Revised Code for the class of work called for by the public improvement, in the locality where the work is to be performed." R.C. 4115.04(A)(1). The Director of Commerce is located in Franklin County. Moreover, R.C. 4115.04(A)(1) was also allegedly violated because neither CSU's request for qualifications nor University Housing Solutions' project proposal stated whether the prevailing wage law applied to the project. University Housing Solutions is also located in Franklin County.

{¶ 37} Given that the potential violations raised in the administrative complaint had their genesis in Franklin County, I would find that the Franklin County Court of Common Pleas had subject-matter jurisdiction to adjudicate this appeal. Because the majority does not, I respectfully dissent.

————————————